OPINION OF THE COURT
Louis B. York, J.

Facts

The plaintiff sues for damages for negligence and conver *802 sion. Subrogor Loren Industries, Inc. (Loren) sent a package via defendant Federal Express Company (Fedco) on or about December 24, 1987. This package was received by Fedco in Hollywood, Florida, and allegedly contained 163 gold ring mountings which had a selling price of $8,143.46. This package was to be sent to Loren’s customer located in New York City by what is designated by both parties as "Priority 1” delivery, meaning that the parcel will reach its destination the following business day by 10:00 a.m. This package never arrived in New York City and there is no information before the court as to the whereabouts of this package or its contents.
Loren did not declare the value of its merchandise with Fedco, although given the option to do so up to the limitations found in its service guide. Instead, Loren insured its goods through plaintiff insurance company and purchased "Constant Surveillance Service” for an additional premium. The terms and conditions of the contractual relations between the parties are found in both the airbill and the booklet entitled Federal Express Service Guide and limits defendant’s liability to $100. This booklet, in relevant part, describes what services the additional "surveillance” premium provides:
"Constant Surveillance Service (CSS)
"This service provides continuous responsibility for the custody of your Priority 1, Courier-Pak Overnight Envelope and Overnight Letter packages.
"Constant Surveillance Service is available at an additional charge.
"See 'Service Conditions’ for complete information on shipping Constant Surveillance Service packages. * * *
"service conditions
"Constant Surveillance Service (CSS)
"Constant Surveillance Service (CSS) is available at an additional charge. This service is designed to provide continuous responsibility for the custody of Priority 1 packages, Courier-Pak Overnight Envelope and Overnight Letters in transit.” (Emphasis added.)
It is uncontested that Loren purchased the additional premium in order to obtain constant surveillance service (CSS). There are restrictions on the constant surveillance service, none of which appear to apply in the present matter. (There is a place in the airbill to "tally” the packages, the CSS block is marked appropriately, the airbill indicates "Deliver Monday,” *803 and the delivery is within the primary service service area.) The court has not been apprised by the defendant of exactly what kind of surveillance service was/is provided, i.e., video or still camera surveillance, personal, etc.
There is no limitation of liability found under the heading constant surveillance service although under a separate heading on the same page is a provision limiting liability. The Federal Express Service Guide contains a limit of liability for any "loss, damage, delay, mis-delivery or non-delivery.” The guide further states that, "[e]xposure to losses in excess of the declared value are either assumed by the shipper or transferred to an insurance carrier by the shipper through the purchase of an insurance policy.” The guide also limits total liability to $100 unless a higher value is declared and "[n]otwithstanding paragraphs (b) and (d) above, packages containing the following items of extraordinary value are limited to a maximum declared value of $500.00 in any event * * * (which includes) * * * jewelry.”
Fedco moves to limit its liability and plaintiff asserts that the motion should be denied because there is evidence as a matter of law that defendant converted the package and also that the defendant breached its agreement by not providing constant surveillance of the package.

Jurisdiction and Conflict of Law

The plaintiff asserts that New York law should apply and defendant argues that Federal common law should be utilized by the court or, in the alternative, Florida law should apply because the contractual agreement was made in Florida. Under New York law, the defendant’s receipt of goods is tantamount to a bailment and defendant/bailee’s inability to account for the whereabouts of the package is prima facie proof of conversion with no limitation of liability. (See, I.C.C. Metals v Municipal Warehouse Co., 50 NY2d 657 [1980]; cfl, UCC 7-204.) Under Federal common law, however, a defendant/carrier may limit his liability provided the shipper has an opportunity to declare the worth of the goods and an opportunity to insure against its loss, as in the present matter. (See, North Am. Phillips Corp. v Emery Air Frgt. Corp., 579 F2d 229 [2d Cir 1978].) Under Florida law, a bailee may limit its liability due to negligence, although there is no limitation of liability in conversion which under Florida law may only be proven by showing actual possession by the *804 bailee, a rather high standard. (See, Sanfisket, Inc. v Atlantic Cold Stor. Corp., 347 So 2d 647 [1977], cert denied 357 So 2d 187 [1978.)
This case, in essence, involves issues related to interstate commerce via air cargo shipment. The court in North Am. Phillips Corp. v Emery Air Frgt. Corp. (supra, at 233-234) held that: "Congress has created a broad, comprehensive scheme covering the interstate shipment of freight, aimed at preventing preferential treatment among shippers and establishing national equality of rates and services. This has occupied the field to the exclusion of state law. * * * [I]t is clear that [a] complaint [alleging interstate shipment of freight] sets forth a claim arising under federal law. Blair v. Delta Air Lines, Inc., supra, 344 F.Supp. at 365.”
The airline and air cargo industry has been regulated by the Federal Government under the Civil Aeronautics Act of 1938 (52 US Stat 973) which was eventually superseded by the Federal Aviation Act of 1958 (PL 85-726, 72 US Stat 731, 49 USC § 1301 et seq.). The Federal Government deregulated the industry in 1981 and further in 1985 in reference to tariffs, rates and practices, subsequent to the decision rendered in North Am. Phillips Corp. v Emery Air Frgt. Corp. (supra) (49 USC § 1551 et seq.). However, the deregulation of the industry did not effect the application of Federal law to issues involving air cargo transportation. (See, First Pa. Bank v Eastern Airlines, 731 F2d 1113 [3d Cir 1984].)
Given the amount of damages in controversy, and the fact that there is a presumption of concurrent jurisdiction with the Federal courts and no explicit statutory directive or legislative history to the contrary or "a clear incompatibility between State court jurisdiction and Federal interests” (Simpson Elec. Corp. v Leucadia, Inc., 72 NY2d 450, 455 [1988], citing Gulf Offshore Co. v Mobil Oil Corp., 453 US 473, 478), the court will exercise jurisdiction. (Cf., Laufer v Rothschild & Co., 143 AD2d 732 [2d Dept 1988].) The court will apply Federal common law because of the Federal interest in uniform application of the law involving interstate commerce via air cargo between the States. (First Pa. Bank v Eastern Airlines, supra; see also, and cf., Hart v Pennsylvania R. R. Co., 112 US 331 [1884].)

Legal Standards in a Motion for Summary Judgment

In a motion for summary judgment, "the court should draw *805 all reasonable inferences in favor of the nonmoving party (Robinson v Strong Mem. Hosp., 98 AD2d 976) and should not pass on issues of credibility (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338)” (Pantote Big Alpha Foods v Schefman, 121 AD2d 295, 297 [1st Dept 1986]). In Gibson v American Export (125 AD2d 65, 74 [1st Dept 1987]), the court stated "the remedy of summary judgment is a drastic one, which should not be granted where there is any doubt as to the existence of a triable issue (Moskowitz v Garlock, 23 AD2d 943, 944) or where the issue is even arguable (Barrett v Jacobs, 255 NY 520, 522), since it serves to deprive a party of his day in court. Relief should be granted only where no genuine triable issue of fact exists (see, Werfel v Zivnostenska Banka, 287 NY 91)”.
Issue — Legal Analysis
We agree with the defendant’s position that it can insulate itself from liability greater than the declared value of the package. (See, Perera Co. v Varig Brazilian Airlines, 775 F2d 21 [2d Cir 1985].) However, the issue here is whether or not the defendant is liable in breach of contract in excess of its liability limit when it fails to provide constant surveillance services even though it otherwise limits its liability. There appears to be no case determining liability under a breach of the constant surveillance service provision of the airbill or service guide.
There is no definition of "constant surveillance” found in the Federal Express Service Guide or the airbill. The defendant does not describe this service in any respect or indicate exactly what kind of service is provided. Webster’s Unabridged Dictionary (2d ed 1979) defines surveillance as "n. 1. inspection or superintendence (or) 2. watch or observation kept over a person, especially one under suspicion or a prisoner.” Surveillant is defined as ”a. keeping surveillance; watching over another or others; overseeing; observant; watchful.” Constant is defined as, "a. * * * 3. going on all the time; continual; persistent; as, constant interruptions.” It is reasonable to conclude that Loren purchased constant surveillance service in order to know the whereabouts of its package, under a watchful eye, from the moment it left its hands to the time it arrived at its destination.
There is no doubt that "any loss, damage, delay, mis-delivcry or non-delivery” of Loren’s package must be borne by the plaintiff. It is that party that is given the option of declaring a *806 higher value and given the opportunity of purchasing other and additional insurance, as was done in this matter. If the constant surveillance service was provided and showed destruction of the merchandise, due to simple negligence, the defendant would have no liability in excess of $100. The court must assume from the plain meaning of the words that the constant surveillance service provided a means of determining how merchandise was handled and when and where any loss may have occurred. The plaintiff, after learning of the loss, would then have the opportunity to recover from such loss, if possible, i.e., if lost, then recovery; if stolen, then legal action against the party who converted the goods; if loss through fire, then the means to permanently close the business records and calculate the loss as a business expense. There appears to be no language within the Federal Express Service Guide that limits the defendant’s liability in regard to its failure to provide constant surveillance of plaintiff’s package. There is no way to determine whether or not the loss was the type that would permit the plaintiff to recover from some third party. It is the breach of defendant’s promise to provide such surveillance, and the frustration it has caused to the plaintiff to recover the merchandise or obtain its present status, that this court holds is a separate cause of action not limited by the contractual agreement to limit defendant’s general liability to $100. (Cf., First Pa. Bank v Eastern Airlines, 731 F2d 1113 [3d Cir 1984], supra.)

Conclusion

There is no evidence before the court to indicate the type of constant surveillance service contractually provided or whether plaintiff could potentially recover their goods had such service been provided and this court will not as a matter of law limit the liability of the defendant when issues of fact going to this question remain. (See, Capelin Assocs. v Globe Mfg. Corp., 34 NY2d 338 [1974], supra.) Based on the foregoing, the defendant’s motion is denied.