TODD HELLER, INC., Appellant,

v.

UNITED PARCEL SERVICE, INC., Appellee.

Superior Court of Pennsylvania.

Argued April 12, 2000.

Filed June 8, 2000.

---

Howard B. Miller, St. Davids, for appellant.

Gordon A. Einhorn, Harrisburg, for appellee.

Before CAVANAUGH and EAKIN, JJ., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

¶ 1 Appellant, Todd Heller Incorporated, challenges the Trial Court's order entering summary judgment in favor of Appellee, United Parcel Service. After review, we affirm.

¶ 2 The learned Trial Judge, The Honorable William F. Moran Jr. of Northampton County, has very ably summarized the facts giving rise to this appeal as follows:

[Appellant] is in the glass recycling business and sells recycled glass for a variety of industrial purposes. In December 1997, [Appellant] became aware that the Indiana Department of Transportation ("INDOT") was soliciting bids from glass suppliers for the purchase of glass beads to be used in making the reflective paint used to paint lines on its state highways. The bid specifications obtained by [Appellant] stated that bidders were required to submit certain documentation and three samples of glass beads to INDOT no later than December 17, 1997.

[Appellant] prepared the documentation and samples. [Appellant] then contacted UPS and made arrangements for four packages to be picked up for shipment on December 16, 1997, one day before the bidding deadline. [Appellant] had an account with UPS and had previously shipped packages via UPS and other carriers at an average of at least four packages per year. There is some suggestion of record that such shipments were significantly more frequent.

As had been arranged, a UPS truck arrived at [Appellant's] facility on December 16, 1997, to pick up the packages. [Appellant] specifically requested next day delivery and actually informed the drivers of the importance of the delivery. The shipping documents were filled out by the UPS drivers. Before UPS's employees left with the four packages, a shipping document was completed for each package. Each of these way bills was signed by . . . [Appellant's] office manager. [Appellant's Office Manager] looked at the documents to check that it provided for next day air and to check the address, but she did not check a value for declared value of contents.

The UPS Next Day Air/UPS Worldwide Shipping Document [which the Office Manager signed] is a preprinted form upon which certain information is entered, including information about the shipper, the recipient, the type of service desired, and the declared value of the contents. The document clearly states that the contents are automatically protected up to $100.00. [Appellant's Office Manager] did not declare a greater value because the intrinsic value of the glass samples was about $8.00.

Among the preprinted information on the shipping documents are certain terms and conditions of shipment, including a statement that "[t]he carrier shall not be liable for any special, incidental, or consequential damages." This language appears in very small black type on the front of the form, immediately to the left of the area where . . . [the Office Manager] signed each shipping document. The reverse side of the shipping document identically restates this limitation of liability under a paragraph entitled "Responsibility for Loss or Damage." [The Office Manager] did not note the limitation of liability on either side. She missed the small language on the front and although she had the opportunity to read the entire document, she did not read the reverse side.

The following day, December 17, 1997, UPS delivered three of the four packages to INDOT. The fourth package, one of the boxes containing sample glass beads, was not delivered until the following day, December 18, 1997. INDOT later informed [Appellant] that it did not consider [Appellant's] bid to be responsive to the bid solicitation due to the fact that the last package did not arrive until after the bid deadline. INDOT is unable to say that [Appellant] would have been awarded the contract had the box arrived in a timely manner. While Appellant's bid was apparently the lowest bid received, the bid specifications also required that the bead samples meet certain criteria and because the Department of Transportation never tested [Appellant's] samples, it [is] not a certainty that these specifications were met.

Trial Court Opinion, filed 9/30/99 at 2–3.

¶ 3 As a result of losing the bid, Appellant commenced the present action against UPS for negligently failing to deliver the package containing the glass beads in a timely manner. Appellant sought $395,581.54 in pecuniary damages, which is the value of the profits that it contends it would have earned if it had been awarded the contract by the Indiana Department of Transportation. Both parties subsequently filed cross-motions for summary judgment. Thereafter the Trial Court granted UPS's motion for summary judgment and entered an order limiting Appellant's recovery to $100.00, the amount provided for in the shipping invoice when no greater value had been declared by the shipper. Appellant filed a timely notice of appeal of this order.

¶ 4 Appellant presents one issue to our Court for our review:

Is a disclaimer of liability for consequential damages in a shipping contract enforceable as a matter of law even though it is deliberately obscure and does not put the shipper on reasonable notice

that there is a limitation of liability for consequential damages?

Appellant's Brief at 3.

¶ 5 Our standard of review of a grant of a motion for summary judgment is well settled. We will only reverse the trial court's entry of summary judgment in instances where there was an abuse of discretion or an error of law by the trial court. *Sebelin v. Yamaha Motor Corp.*, 705 A.2d 904, 906 (Pa.Super.1998). Summary judgment may be properly entered only where (1) there is no genuine issue of material fact as to a necessary element of the cause of action which could be established by additional discovery or an expert report, or (2) after completion of discovery and production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action. *Campanaro v. Pennsylvania Electric Company*, 738 A.2d 472, 475–476 (Pa.Super.1999), *appeal denied*, —— Pa. ——, 751 A.2d 183 (Pa. 2/1/2000) *citing* Pa.R.C.P. 1035.2

¶ 6 An appellate court's scope of review of the grant of a motion for summary judgment is plenary. *Washington v. Baxter* 553 Pa. 434, 441, 719 A.2d 733, 737 (1998). As a result,

> [I]n making [the] determination [of whether the entry of summary judgment was proper], we must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. All doubts as to the existence of a factual dispute must be resolved in favor of the non-moving party and the entry of summary judgment is appropriate only in the clearest of cases.

*Borough of Mifflinburg v. Heim*, 705 A.2d 456, 465 (Pa.Super.1997), *appeal denied*, —— Pa. ——, —— A.2d ——, 1999 WL 147921 (1999); *Kingston Coal Co. v. Felton Mining Co.*, 456 Pa.Super. 270, 690 A.2d 284, 287 (1997), *appeal denied*, 549 Pa. 702, 700 A.2d 441 (1997).

¶ 7 As the parties to this appeal and the Trial Court all agree, the liability of an interstate common carrier such as United Parcel Service for the loss, damage or delay of goods in transit is determined by Federal common law. *First Pennsylvania Bank v. Eastern Airlines Inc.*, 731 F.2d 1113, 1115 (3d Cir.1984); *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425, 427 (8th Cir.1985); *McCall–Thomas Engineering Co. v. Federal Express Corp.*, 81 F.3d 28, 30 (4th Cir.1996); *Uniden v. Federal Express Corp.*, 642 F.Supp. 263, 265 (M.D.Pa. 1986); *Commodities Recovery Corp. v. Emery Worldwide*, 756 F.Supp. 210, 212 (D.C.N.J.1991); *St. Paul Fire & Marine Ins. v. Federal Express Corp.*, 145 Misc.2d 801, 548 N.Y.S.2d 422, 424 (1989); *Burlington Air Express Inc. v. Georgia Pacific Corporation*, 211 Ga.App. 113, 438 S.E.2d 97, 98 (1993); *Butler Intern., Inc. v. Central Air Freight*, Inc., 102 N.C.App. 401, 402 S.E.2d 441, 445 (1991).

¶ 8 Federal common law has long recognized that a shipper and carrier may contractually agree to a specific value for the property the shipper wishes the carrier to deliver. Once there is an agreed upon value of the shipped property this in turn determines the shipping rate, since the shipping cost is contingent on the condition that the carrier's liability for loss, damage, or delay will be limited to the extent of the shipped property's agreed upon valuation. This is known as the "released value doctrine." This doctrine enables the carrier to limit its liability for actual damages resulting from its negligence. *Husman v. Purolator Courier*, 832 F.2d 459, 461 (8th Cir.1987).

> In order for a [carrier's] limitation of liability to be valid under the "released value doctrine," the carrier must present the shipper with a reasonable opportunity to declare a value for the shipment above the maximum value set by the carrier, pay an additional fee, and thereby be insured at a higher rate should the shipment go awry. It is not neces-

sary that an employee of the carrier explain the option to declare a higher value to the shipper. Rather, the carrier must provide only reasonable notice of the opportunity to declare a higher value.

*Id.* (citations omitted); *Norton v. Jim Phillips Horse Transportation, Inc.*, 901 F.2d 821, 825 (10th Cir.1989); *Accord Hampton v. Federal Express*, 917 F.2d 1119, 1121 (8th Cir.1990). "[T]he obligation of the carrier must be determined solely from the recitals of the written contract itself." *Uniden*, 642 F.Supp. at 266. The specific provisions limiting a carrier's liability are found in the bill of lading or shipping invoice, which serves as the contract between the carrier and the shipper. *Husman*, 832 F.2d at 461; *Accord Butler*, 402 S.E.2d. at 445.

¶ 9 In the case at bar, as noted by the Trial Court, in the lower left-hand corner of the front of the shipping invoice, to the left of the line which Appellant's office manager signed, is a limitation of liability clause. This clause provides:

> Unless a greater value is declared in writing on this receipt, the shipper hereby declares and agrees that the released value of each package covered by this receipt is $100.00, which is a reasonable value under the circumstances surrounding the transportation. The rules relating to liability established by the Warsaw Convention and any amendments thereto shall apply to the international carriage of any shipment hereunder insofar as the same is governed thereby. In addition the maximum value of or declared value per package is $50,000 and the maximum liability per package is $50,000. Claims not made to the carrier within 9 months of the scheduled delivery date are waived. The carrier shall not be liable for any special, incidental or consequential damages.

*See* "UPS NEXT DAY AIR, UPS WORLDWIDE EXPRESS" Shipping Document, attached to UPS's Memorandum of Law In Support of Its Motion for Summary Judgment, filed 6/7/99. This is the only legal clause on the front of the document. Additionally Section 5 on the front of the shipping invoice form contains a subsection labeled "DECLARED VALUE." This section provides the shipper with a box to check to allow the shipper to signify that that he or she wishes to declare a value of the goods being shipped. There is a blank line with a dollar sign next to the box which allows the shipper to write in a specific monetary value of the goods being shipped. Underneath this line is a statement that: "Contents are automatically protected up to $100.00. For declared value over $100.00, see instructions." *Id.* At the top of the shipping invoice in large lettering is also printed the statement: "See instructions on back." *Id.*

¶ 10 The back of the shipping invoice is entitled "UPS WORLDWIDE EXPRESS TERMS AND CONDITIONS." In the right-hand column half-way down the length of the document is a section entitled: "Responsibility for Loss or Damage." This provision states:

> Unless a greater value for insurance is declared in writing in the space provided on the UPS Air Shipping Document, the shipper declares the released value of each shipment to be no greater than $100.00 U.S. For each $100.00 U.S. or fraction thereof of declared value for insurance per shipment in excess of $100.00 U.S. an additional charge, as stated on the current rate chart, will be assessed.... Except if otherwise directed by the shipper, the carrier will remit excess valuation charges to an insurance company or companies as a premium for shippers interest cargo insurance for the shipper's account and on its behalf. When the carrier does so claims for loss or damage to the shipper's property will be filed and settled by the carrier on behalf of the applicable insurance company. Shipper's Interest Cargo Policies are available for inspection at the office of the carrier. Claims not

made within six months after delivery of the package, or in the case of non-delivery within six months after a reasonable time for delivery shall be deemed waived. The carrier shall not be liable for any special, incidental or consequential damages.

*Id.*

¶ 11 The Trial Court found that because of these specific provisions contained in the shipping invoice and Appellant's past commercial dealings with UPS, it reasonably should have been aware that UPS intended to limit its liability for the value of the goods being shipped to $100.00 unless a higher monetary value of coverage was requested by it. The Trial Court also found that these provisions clearly communicated that under no circumstances did UPS intend to indemnify a shipper such as Appellant for incidental or consequential damages for late delivery of a package.

¶ 12 The Trial Court reasoned:

[Appellant] has been in business for many years. Its employees had previously shipped bids and other packages via UPS. [Appellant] had a UPS account. [The Office Manager's] testimony established that [Appellant] shipped at a minimum 30 packages since 1990 and that she was primarily the person who signed the shipping forms. In this context, a writing on the front side of the airbill directing the customer to see the instructions on the back, coupled with an equally prominent disclaimer on the reverse side, is sufficient to communicate the liability limitation or at least to impose on the commercial customer a further obligation to read what is written.

Trial Court Opinion, *supra,* at 7–8.

¶ 13 Our review of the record supports the Trial Court's findings of fact and conclusions of law. The terms of the limitation of liability clauses are worded in an unambiguous fashion to convey UPS's intent to limit its liability for the value of goods being shipped to $100.00 unless a greater value for the goods is declared.

The terms are also very specific in stating that under no circumstances will UPS be liable for "special, incidental or consequential" damages. These terms are set forth in two separate places on both the front and back of the document, and the shipper is also instructed at the very beginning of the document to read the instructions on the back. Additionally, Appellant was given a reasonable opportunity on the form to declare a higher value for the goods being shipped greater than $100.00 by simply checking a box and writing in a higher declared value.

¶ 14 Moreover, as the Trial Court noted, this was a commercial transaction between two business entities. Appellant had been in business since 1980. N.T., Deposition of Todd Heller, 3/25/99, at 7. Over the years it had been a repeated participant in the governmental bidding process and has used UPS on prior occasions to ship bids. *Id.* at 28, 37, 39–40. Appellant has also engaged in many commercial transactions with private entities relating to the sale of the glass beads which it manufactures. *Id.* at 7–8. As a result Appellant had ample previous exposure to legal details and contract terminology. The import of these specific limitations of liability terms in the shipping invoice should have therefore been apparent. Under these circumstances, we have no difficulty in concluding that UPS is entitled to limit its liability to $100.00 under the "released value doctrine." *Husman, supra; First Pennsylvania Bank, supra.*

¶ 15 Other courts have reached similar conclusions in addressing the issue of a carrier's liability to a shipper for failure to deliver time-sensitive documents whenever the shipper fails to designate a higher value for the shipment. In *Husman, supra,* the Unites States Government General Services Administration (GSA) advertised to solicit bids for the renovation of the Court facilities in Sioux Falls South Dakota. Bids were due by 1:30 p.m. March 12, 1985 in the offices of GSA in Denver Colorado. The day before the bids

were due, March 11, 1985, Husman, the owner of a construction company, delivered a sealed construction bid to the offices of Purolator Courier. Purolator agreed to deliver the bid to GSA by noon the following day. Husman subsequently delivered a bid modification to Western Union on the morning of March 12 and Western Union agreed that it would transmit the modification to GSA before the bid deadline.

¶ 16 The bill of lading from Purolator which Husman signed contained limitation of liability provisions similar to those contained in the UPS invoice in the instant case. Purolator's bill of lading contained a limitation of liability clause on the front of the bill which provided that Purolator's liability for loss, damage or non-delivery was limited to $250.00 unless a greater value was declared. This clause provided that under no circumstances would Purolator be liable for special, incidental or consequential damages. The face of the bill of lading also directed the shipper to read the reverse side of the bill of lading which contained similar provisions limiting Purolator's liability in the same manner as the first clause. The face of the shipping bill itself provided spaces for a shipper to write in a declared value for the shipment.

¶ 17 As fate would have it, the plane on which the bid documents were to be transported by Purolator developed engine problems. Thus, Purolator did not deliver the bid until over an hour and a half after the 1:30 p.m. deadline. Western Union also did not transmit the bid modification until after the deadline passed. Husman's bid, which would have been the winning bid was therefore not considered by the GSA due to its untimely arrival. Husman sued both Purolator and Western Union for the profits that he would have realized had the bid been delivered in a timely manner. The district court granted sum-

mary judgment in favor of Purolator and the 8th Circuit affirmed.

¶ 18 In rejecting Husman's claim against Purolator [1] and affirming the District Court, the 8th Circuit stated:

By his own admission, Husman was an experienced bidder who had used Purolator several times to deliver previous bids. However, despite this experience, and despite the warning in the Worldwide Directory, Husman chose not to obtain independent insurance coverage, even though he was sending his bid only one day before it was due. Nor did Husman pursue an alternative method of sending the bid, such as certified or registered mail, either of which guarantees that a bid will be considered even if it arrives late, so long as it is postmarked five days before bidding closes. See 48 C.F.R. 14.304–1(a)(1) (1985).

Instead, ignoring the clear and valid limitations of liability in the contract he signed, Husman brought this suit in district court. No relief will be forthcoming. Those using delivery services to transmit bids are in the best position to procure insurance for their time-sensitive cargo or to otherwise proceed at their own risk.

*Id.* at 462.

¶ 19 In *Uniden v. Federal Express, supra,* Uniden was bidding on a project managed by the Commonwealth of Pennsylvania Department of General Services. One of the requirements of the bidding process was that Uniden post a performance bond by a specific date. Uniden elected to send the bond by Federal Express "overnight letter." One of Uniden's agents filled out the shipping invoice. The front of the shipping invoice contained a limitation of liability clause that provided that Federal Express would not be liable for special, incidental or consequential damages with respect to the shipment. The clause also limited Federal Express's liability to

1. Husman's claim against Western Union was dismissed as well since it was derivative of his claim against Purolator.

$100.00 for the shipment unless a higher value was declared. The reverse side of the invoice contained similar language expressly disclaiming all liability for special incidental and consequential damages and limiting pecuniary liability to $100.00 unless a higher value was declared.

¶ 20 The performance bond did not arrive in a timely fashion and Uniden was not awarded the bid. Uniden then sued Federal Express for the lost profits due to Federal Express's failure to deliver the package in a timely fashion. The learned and distinguished Judge Sylvia H. Rambo of the United States District Court for the Middle District of Pennsylvania rejected Uniden's claim. She instead entered summary judgment for Federal Express and limited Uniden's recovery to $100.00, the amount specified by the limitation of liability clauses in the shipping invoice. In explaining her decision, Judge Rambo wrote:

> [T]he parties entered into a written contract, the terms of which are clear. A shipper seeking damages from a carrier for delay in delivery or loss of property is bound by the terms of the carriage contract. By leaving the declared value section [of the invoice] blank, Uniden limited its expectation of recovery to an amount not in excess of $100.00.

*Id.* at 267 (internal citation omitted).

¶ 21 In *Wagman v. Federal Express*, 844 F.Supp. 247 (D.Md.1994), *affirmed without opinion*, 47 F.3d 1166 (4th. Cir.1995) an attorney sent a personal injury complaint by Federal Express for filing. The attorney needed the complaint to be delivered by the following Monday because that was the last day for filing of the complaint allowed by the statute of limitations. He was assured by the Federal Express courier that the complaint would be delivered. The shipping invoice, which the attorney signed, contained a limitation of liability provision on the front of the form which provided that Federal Express's liability for all damages was limited to $100.00 unless the shipper declared a higher value.

There was another space on the front of the form which allowed the shipper to declare a higher value for the shipped materials. A similar clause stating that Federal Express's liability for all damages was limited to $100.00 unless the shipper declared a higher value was contained on the back of the invoice.

¶ 22 The attorney failed to declare a higher value for the package. Unfortunately, the complaint was not delivered in a timely fashion and the statute of limitations expired. Consequently, the attorney sued Federal Express. The United States District Court of Maryland granted summary judgment for Federal Express ruling, that because the attorney had failed to declare a higher value for the material being shipped, he could recover no more than $100.00 from Federal Express due to the limitation of liability provisions contained in the shipping invoice. *Id.* at 250–251.

 ¶ 23 Thus it is clear that those in Appellant's position who utilize a commercial shipping service for delivery of time-sensitive documents such as a bid should be aware that they are bound by the terms of the shipping contract which they enter into as set forth in that contract. Their recourse, should the shipment not be delivered in a timely fashion, is accordingly limited by the terms of that contract.

 ¶ 24 Appellant has advanced the argument to our Court that the Trial Court in rendering its decision to grant summary judgment erred by failing to consider the affidavit of the owner and general manager of a printshop, one Wilhelm Meisenger. Appellant argues that Meisenger rendered an expert opinion in his affidavit that the typeface used in the limitation of liability clauses was not conspicuous and thereby created an issue of material fact which warranted defeat of UPS's Motion for Summary Judgment. We cannot agree.

¶ 25 It is axiomatic that when making a ruling on a motion for summary judgment a trial court may weigh matters contained in an affidavit only "to the extent that it set[s] forth matter which would be admissible into evidence." *McFadden v. American Oil Company*, 215 Pa.Super. 44, 257 A.2d 283, 287 (1969). As UPS correctly points out, an opinion as to whether language in a contract is conspicuous is not the proper subject of expert testimony. Under Pennsylvania caselaw, which has been reflected by the language of Pa.R.E. 702, expert testimony is permitted to be presented to the jury only "when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman." *Taylor v. Celotex Corp.*, 393 Pa.Super. 566, 574 A.2d 1084, 1092 (1990); *Beary v. General Container Corp.*, 368 Pa.Super. 61, 533 A.2d 716, 722 (1987), *appeal denied* 520 Pa. 586, 551 A.2d 213 (1988); *Commonwealth v. O'Searo*, 466 Pa. 224, 228, 352 A.2d 30, 32 (1976). *See also* Pa.R.E. 702 ("Expert testimony is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. Where the issue involves a matter of common knowledge, expert testimony is inadmissible.").

¶ 26 Whether or not the typeface of a document is conspicuous to the unaided human eye is a matter which is clearly within the knowledge and experience of every human being, since the functioning of modern society renders reading an integral part of a person's day to day activities. Thus, the owner of the print shop would not have been permitted to testify at trial as an expert. As a result, the Trial Court did not have to accord the print shop manager's affidavit any weight whatsoever in its consideration of the motion for summary judgment. *McFadden, supra.* Moreover, our own inspection of the shipping invoice in the case at bar indicates that the typeface and font used in the limitation clauses, although small, is legible and readable by those of ordinary vision.

¶ 27 Furthermore, even if the Trial Court did consider the affidavit, the affidavit alone was insufficient to establish a genuine issue of material fact which would have defeated UPS's motion for summary judgment. As discussed, *supra*, a carrier must provide only "reasonable notice of the opportunity to declare a higher value." *Husman*, 832 F.2d at 461; *Norton, supra*, 901 F.2d at 825 (emphasis supplied). Thus, to show that UPS could not avail itself of the limitation of liability clause in the bill of shipping, Appellant was required to show that the clause did not reasonably put him on notice as to UPS's intent to limit liability.

¶ 28 The reasonableness of a carrier's notice to its shipper is a question of law to be determined by the court. *Welliver v. Federal Express Corp.*, 737 F.Supp. 205, 207 (S.D.N.Y.1990); *Matrka v. Delta Airlines*, 116 Ohio App.3d 678, 688 N.E.2d 1130, 1133 (1997). However, in making this determination courts are not restricted to an examination of the physical characteristics of the document itself. Courts may also look at extrinsic factors such as the opportunity the shipper had to review the contract, his or her level of experience with the carrier and his or her general level of sophistication in these types of matters. *See Carmana v. North American Van Lines*, 943 F.2d 316, 321 (3d Cir.1991) ("A shipper's sophistication, abundant experience, or extensive prior dealings with a carrier may constitute additional evidence of a limitation agreement between the parties.")

¶ 29 This principle was illustrated in an analogous case that involved the issue of the conspicuousness of limitation of liability provisions contained in an airline ticket and its accompanying documentation. In *Deiro v. American Airlines, Inc.*, 816 F.2d 1360 (9th Cir.1987) a veteran airline traveler elected to transport racing greyhounds

as baggage aboard a commercial flight. The owner was provided with a copy of the ticket which, like the invoice in the current case, contained a limitation of liability clause on the front of the invoice in small print. Inside the ticket booklet was a clause in larger type which restated the terms and conditions set forth on the ticket. The greyhound's owner decided to ship his dogs as baggage but without declaring a higher value for them as was his option under the ticket provisions. Subsequently during transit, the greyhounds unfortunately died from heat exposure. The owner then sued to recover $900,000 which he contended was their appraised actual value. The district court granted summary judgment and ruled that the airline's maximum liability was $750.00, the amount specified in the ticket when no additional value had been declared by the ticketholder.

 ¶ 30 On appeal the Ninth Circuit affirmed. The court was somewhat troubled by the use of the exceedingly small typeface in the limitation of liability clauses. However, in ultimately ruling that the contract provided reasonable notice of the carrier's limitation of its liability, the determinative factor for the court was not the size of the typeface used in the document, but rather the prior experience of the owner with these types of documents containing limitation of liability provisions. The court gave great weight to the fact that the dog owner was a veteran sophisticated airline traveler who flew commercial airlines six to ten times a year. The owner also was aware that there was writing printed on the ticket and had an opportunity to examine the provisions of the ticket before the flight was to take place. The court therefore concluded that since the dog owner had a reasonable opportunity to acquaint himself with the limitation of baggage liability provisions he should have done so in light of the fact that he was shipping such valuable cargo. *Id.* at 1364–

1365. *See also Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 930 (5th Cir.1997) (court looked to both language in shipping invoice and the shipper's prior experience and opportunity to inspect the shipping invoice to determine if shipper gave adequate notice of limitation of liability provisions). Thus, even if a party successfully establishes that the language of a shipping contract is inconspicuous, a court will still enforce the contract provision in situations where the shipper had an opportunity to review the contract or had previous experience dealing with the carrier.

 ¶ 31 Consequently, the affidavit of the printshop owner, even if accepted by the Trial Court as true, would not have negated the uncontroverted fact that Appellant's prior experience with UPS invoices as a commercial customer of theirs, coupled with his agent's opportunity to read the invoice before signing it, should have provided the requisite awareness of the existence of the limitation of liability provisions contained in the shipping invoice. In the case at bar, as the Trial Court found and which finding was uncontroverted, Appellant had an account with UPS and had shipped with U.P.S. at least 30 times since 1990. Since 1987 all UPS shipping invoices have contained these limitation of liability provisions;[2] hence Appellant would have had many opportunities to inspect these provisions on prior occasions. Appellant's agent once more had an opportunity to read the shipping document at the time she signed it when she shipped the bid materials. By virtue of these factors alone, the Trial Court was justified in concluding that Appellant had reasonable notice of the terms in the shipping invoice limiting UPS's liability. *See Read–Rite v. Burlington Air Express*, 186 F.3d 1190, 1199 (9th Cir.1999) (shippers' agent's action of viewing shipping invoice and limitation of liability provisions contained therein sufficient to give shipper actual notice of invoice's limitation of liability provisions);

---

2. *See* Affidavit of Beverly Mehalick, attached as Exhibit 5 to UPS's Memorandum of Law in Support of its Motion for Summary Judgment, filed 6/7/99.

*Norton*, 901 F.2d. at 824 (shipper bound by terms limiting liability that were printed on bill of lading because of prior experience and fact that subagent signed bill of lading even though shipper was not expressly told that carrier's liability would be limited).

¶ 32 Appellant additionally argues that the nature of the contract between itself and UPS, the shipping invoice, is an adhesion contract whose essential terms are unconscionable thereby rendering the contract unenforceable. Generally, an adhesion contract is a "standardized contract form offered to consumers of goods and services on [an] essentially 'take it or leave it' basis without affording [the] consumer a realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing [to the] form contract." *Denlinger, Inc. v. Dendler*, 415 Pa.Super. 164, 608 A.2d 1061, 1066 (1992) *quoting* Black's Law Dictionary (5th.Ed.1979). The fundamental nature of this type of contract is such that the consumer who is presented with it has no choice but to either accept the terms of the document as they are written or reject the transaction entirely. *Leidy v. Deseret Enterprises Inc.*, 252 Pa.Super. 162, 381 A.2d 164, 167 (1977).

¶ 33 In the case at bar Appellant was not presented with a complete all or nothing choice by the shipping invoice with respect to the value of the goods (the glass beads) being shipped. As UPS notes, the shipping invoice allows the shipper to choose varying degrees of coverage for the intrinsic value of the goods to be shipped, up to a maximum liability of $50,000. Thus, Appellant could have elected a higher degree of coverage for the value of the goods shipped. Hence, the contract was not a contract of adhesion with respect to the value of the goods shipped.

¶ 34 However, what Appellant is seeking recovery for is not the value of the goods shipped but damages equivalent to the dollar value of the contract with the Indiana Department of Transportation. These are consequential damages.[3] The shipping invoice clearly indicates that under no circumstances will UPS be held liable for consequential damages. Thus, the invoice does not allow the shipper to choose any coverage whatsoever from UPS which would enable him or her to be indemnified for consequential damages resulting from late delivery or misdelivery of the package. As these terms are nonnegotiable, the shipper must therefore take them or leave them. Hence, we agree with Appellant that the invoice is in this regard a contract of adhesion. However, merely because a contract is a contract of adhesion does not automatically render it unconscionable and unenforceable.

¶ 35 With respect to the fundamental nature of adhesion contracts our Supreme Court has said:

> Under such a contract, the parties are usually not of equal bargaining power and the weaker party must adhere to the terms of a form contract which are not negotiable. In other words, its terms are not bargained for but rather dictated ... Not every such contract is necessarily unconscionable. Once a contract is deemed to be one of adhesion, its terms must be analyzed to determine whether the contract as a whole, or specific provisions of it are unconscionable.

*Rudolph v. Pennsylvania*, 553 Pa. 9, 17, 717 A.2d 508, 511 (1998) (Nigro J. concurring) (citations and quotations omitted). The ultimate issue of whether a contract or clause is unconscionable is a question of law for a court. *Id.*

¶ 36 "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of

3. Consequential damages are "losses that do not flow directly and immediately from an injurious act, but that result indirectly from

the act." *Black's Law Dictionary* (7th Ed.) at 394.

the parties together with contract terms which are unreasonably favorable to the other party." *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965); *Peoples Mortgage Co., v. Federal National Mortgage Ass'n,* 856 F.Supp. 910, 927 (E.D.Pa.1994); *Witmer v. Exxon,* 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981). Consequently, for a Court to deem a contractual provision unconscionable it must determine both "that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Harris v. Green Tree Financial Corporation,* 183 F.3d 173, 181 (3d Cir.1999).

¶ 37 The specific provisions of the invoice by which UPS has chosen to limit its liability for consequential damages are not contractual terms which are unreasonably favorable to UPS. By virtue of its status as a commercial carrier, UPS handles a exceedingly high volume of packages on a daily basis. Courts have recognized that commercial carriers like UPS are justly entitled to reasonably limit their potential staggering monetary liability for the infinite possible panoply of consequential damages which could result from the failure to deliver one of those packages, due to the fact that the shipper has paid them a comparatively small sum of money for the package's delivery. As the Eight Circuit Court of Appeals has so aptly stated: "It is unreasonable to subject a carrier to liability for enormous and unforeseeable consequential damages in return for an $11.75 shipment fee." *Husman,* 832 F.2d at 462.

¶ 38 The public policy benefits of this rationale to both carriers and shippers are clear:

[Limitations of liability clauses] allow a ... carrier to avoid unforeseeably high liability for especially valuable cargo, and they permit shippers of ordinary items to pay lower rates. At the same time, they permit shippers of valuable cargo to choose between purchasing insurance directly from the carrier, or obtaining perhaps less expensive insurance from an independent source.

*Hill Construction Corp. v. American Airlines, Inc.,* 996 F.2d 1315, 1317 (1st Cir. 1993); *Matrka, supra,* 688 N.E.2d at 1133.

¶ 39 As a result:

[W]here a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.

*First Pennsylvania Bank* at 731 F.2d at 1116; *Accord Nippon Fire and Marine Insurance Company v. Skyway Freight Systems,* 45 F.Supp.2d. 288, 291 (S.D.N.Y. 1999) *quoting Ruston Gas Turbines, Inc. v. Pan American World Airways,* 757 F.2d 29, 30 (2d Cir.1985) ("The policy basis for allowing carriers to limit their liability is that the carrier is entitled to know the extent of its potential liability for loss of the property and to be compensated in proportion to the risk assumed.")

¶ 40 Thus, Courts have overwhelmingly concluded that limitation of liability provisions in a shipping invoice which preclude recovery of incidental or consequential damages are valid. *Husman, supra, Uniden supra, Apartment Specialists v. Purolator Courier Corp.,* 628 F.Supp. 55, 59 (D.D.C.1986), *affirmed without opinion,* 804 F.2d 153 (D.C.Cir.1986); *Universal Computer Systems v. Allegheny Airlines,* 479 F.Supp. 639, 643 (M.D.Pa.1979), *affirmed* 622 F.2d 579 (3d Cir.1980); *Ragsdale v. Airborne Freight Corp.,* 173 Ga. App. 48, 325 S.E.2d 428, 430 (1984).

¶ 41 We must therefore reject Appellant's contention that the limitation of liability provisions in UPS's shipping invoice are unconscionable and unenforceable as against public policy with respect to a commercial customer such as it. Accordingly, we are compelled to affirm the order of the Trial Court.

¶ 42 Order affirmed.

¶ 43 CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, J., concurring:

¶ 1 I concur in the result reached by the majority. I write to express my divergence in two respects: First, to the extent that the majority opinion may be read to rely upon the fact that appellant is a business enterprise and an experienced shipper in reaching the conclusion that the contract limitation of damages is enforceable, I disagree. I believe that the limitation is applicable to any shipper who seeks to place a value in excess of $100 on the goods shipped and to make the enforceability in any way dependant on a business to business transaction, or the sophistication of the shipper in commercial matters is to unnecessarily introduce a variable which is unrelated to the reasonable burden which is placed upon any user of the parcel service. Secondly, I also disagree with the conclusion that the instant transaction involves in any aspect a contract of adhesion. In my view, the exclusion of liability for special, incidental or consequential damages, while it may be non-negotiable in that it is included on a take it or leave it basis, is simply a reasonable disclaimer of liability for forms of damages which no reasonable user of a parcel service should expect in return for the shipping fee charged. Because of the infinite variety of consequential damages which might be claimed by reason of undelivered or late delivered parcels, it is commercially prudent to allow a carrier of goods to disclaim responsibility for consequential damages without reference to the doctrine of contracts of adhesion.