A93A1153. BURLINGTON AIR EXPRESS, INC. v. GEORGIA PACIFIC CORPORATION et al.
(438 SE2d 97)

POPE, Chief Judge.

Plaintiffs Georgia Pacific Corporation ("GP") and BTL Specialty Resins Corporation ("BTL") are producers of formaldehyde. Silver is used as a catalyst in the production process and after use, the scrap silver may be refined and reused. In late 1989 and early 1990, plaintiffs contracted with defendant Burlington Air Express, Inc., a common air carrier, to transport five shipments of scrap silver to a refinery in Massachusetts. When these shipments were lost, defendant refused to pay plaintiffs the full declared value of the scrap silver, relying on provisions of its airbill and governing tariff which defendant said limited its liability. Plaintiffs then brought this action for compensatory damages, punitive damages and attorney fees, alleging breach of contract and conversion, and the parties filed cross-motions for partial summary judgment. The trial court denied defendant's motion and granted plaintiffs' motion for summary judgment with respect to defendant's liability for compensatory damages, and defend-

ant appeals.

1. Defendant contends the trial court erred in applying the provisions of the Interstate Commerce Act, 49 USCA § 101 et seq., to a case involving the transport of cargo by air. Specifically, defendant contends that since the air transport industry has been deregulated, it is not governed by the Act. In *Ragsdale v. Airborne Freight Corp.*, 173 Ga. App. 48 (1) (325 SE2d 428) (1984), however, this court recognized (a) that since deregulation, federal law continues to govern the enforceability of limitation provisions in airbills and (b) that although deregulation took air cargo carriers outside the jurisdiction of any regulatory commission or agency, the body of laws and principles expressed in the Act continues to be applicable to air carriers as federal common law. See also *First Pennsylvania Bank, N. A. v. Eastern Airlines*, 731 F2d 1113 (3d Cir. 1984). Accordingly, the trial court did not err in looking to the Act to answer various questions raised in this case.

2. For each of the five shipments, the record contains an airbill and invoice. The airbills and invoices for the first and third shipments show a declared value of $8,000, a specific instruction to insure the shipment for $8,000 and a charge assessed by defendant for the extra value of the cargo. The documents for the second shipment also show a declared value of $8,000 and a specific instruction to insure for that amount, but the invoice does not show an extra value charge. For the fourth shipment the box on the airbill for declared value is left blank; however, there is a special instruction to "insure for $6,500" above the empty declared value box on the airbill. Moreover, the invoice for that shipment lists a declared value of $6,500 and assesses an extra value charge. The documents for the last shipment show a declared value of $6,500, a special instruction to insure for $6,500 and an extra value charge. The first three shipments were from BTL; the latter two were from GP.

The airbills, in small print on their reverse side, incorporate by reference the terms of defendant's tariff. Defendant argues that these terms limit recovery for a lost shipment of precious metal to $500. Under federal common law as reflected in the Interstate Commerce Act, however, a carrier cannot limit his liability to less than the declared value of the shipment by the inconspicuous incorporation of a tariff provision "unless it is shown that the shipper was specifically aware of it." *Bio-Lab v. Pony Express Courier Corp.*, 911 F2d 1580, 1583 (11th Cir. 1990). Moreover, this rule that the carrier is liable for the full declared value applies even if, as appears to be the case with one of BTL's shipments, the carrier fails to charge a higher rate to compensate for its higher risk. See id. at 1584. In this case, it is undisputed that plaintiffs were not specifically aware of the tariff provision defendant relies on; it follows, therefore, that it is not enforceable

against them.

Defendant asserts that at least the recovery for the GP shipment for which the declared value box was left empty should be limited, asserting that "[b]y leaving the declared value section . . . blank, [plaintiff] limited its expectation of recovery to an amount [provided on the back of the airbill]." *Uniden Corp. of Am. v. Federal Express Corp.*, 642 FSupp. 263 (M. D. Pa. 1986). However, this assertion is belied by the presence of the special instruction to insure for $6,500 above the empty declared value box, the declared value of $6,500 on the invoice and the payment of an excess value charge, all of which clearly show an understanding on the part of GP that the declared value was $6,500 and a willingness to pay a higher rate to obtain the carrier's liability for this higher value.

3. Section 17 of the airbill provides that any action brought on a claim must be brought within one year of written notice that the claim is disallowed in full or in part. Defendant argues that it disallowed claims on four of the shipments more than one year (but less than two) before this suit was filed. As discussed in Division 1, however, the enforceability of this contractual limitation is controlled by federal common law as reflected in the Interstate Commerce Act, and the Act states that a carrier may not provide by contract for a period of less than two years from written disallowance of a claim for bringing an action against it. See 49 USCA § 11707 (e). Thus, the airbill provision requiring any action to be brought within a year of written disallowance is unenforceable, and defendant's argument is without merit.

4. Defendant sent BTL two checks with the following language on the back: "Acceptance and endorsement of this check by the payee acknowledges full settlement and release of all claims against [defendant]. . . ." Because BTL accepted the checks, defendant contends it was released from further liability on at least the two claims referenced on the checks. The record clearly shows, however, that BTL did *not* endorse the checks, as the signature line for endorsement if BTL chose to release defendant was left blank. Consequently, defendant was not released, and this contention is also without merit. The cases cited by defendant for the proposition that an actual endorsement is not required are inapposite because the checks in those cases simply stated that they represented full and complete settlement of a claim and did not have the language requiring endorsement quoted above — language that defendant itself drafted.

5. For these reasons, the trial court properly granted plaintiffs' motion for summary judgment and denied defendant's motion for summary judgment with respect to defendant's liability for compensatory damages for breach of contract, including pre-judgment interest. See OCGA § 7-4-15. Additionally, the trial court did not err in

ruling that questions of fact remained for the jury regarding whether an award of attorney fees was warranted. OCGA § 13-6-11 (expenses of litigation may be awarded plaintiff in contract action where defendant has acted in bad faith, has been stubbornly litigious, or has caused plaintiff unnecessary trouble and expense); see also *Spring Lake Property Owners Assn. v. Peacock*, 260 Ga. 80 (390 SE2d 31) (1990) (question of attorney fees under OCGA § 13-6-11 is question for jury). However, there is no evidence of conversion in the record and punitive damages cannot be awarded for breach of contract. See OCGA § 13-6-10. The trial court therefore erred in denying defendant's motion for summary judgment with respect to punitive damages, and this portion of the trial court's order must be reversed.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 27, 1993 —
RECONSIDERATION DENIED NOVEMBER 23, 1993 — ▮▮▮▮▮▮▮

*Clark & Clark, Fred S. Clark*, for appellant.
*Parker, Johnson, Cooke & Dunlevie, Everett W. Gee III, G. William Long*, for appellees.