**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**February 4, 2015**

# In the Court of Appeals of Georgia

A14A2015. THOMASON v. FIA CARD SERVICES, N.A.

DILLARD, Judge.

Phillip L. Thomason, *pro se*, appeals the trial court's grant of summary judgment to FIA Card Services, N.A. ("FIA") on its complaint on a credit-card account, contending that FIA failed to establish that it was the real party in interest with standing to sue and that the trial court erred in summarily disposing of his counterclaims. For the reasons noted *infra*, we reverse.

Viewed in the light most favorable to the nonmovant (Thomason),[1] the record reflects that on September 8, 2010, FIA filed suit against Thomason to recover what it alleged was an outstanding balance upon a credit card with a 14-digit account

---

[1] *See Angel Bus. Catalysts, LLC v. Bank of the Ozarks*, 316 Ga. App. 253, 254 (728 SE2d 854) (2012); *Kensington Partners, LLC v. Beal Bank Nevada*, 311 Ga. App. 196, 196 (715 SE2d 491) (2011).

number ending in 3030. Specifically, FIA asserted that Thomason owed an outstanding balance of $76,114.19, plus court costs of $255.00 And in support of its claim, FIA attached to the complaint a copy of a certificate issued and signed by its assistant secretary on July 20, 2009, which certified that on October 20, 2006, Bank of America, N.A. "merged into and under the charter and title of FIA Services . . . ."

On October 5, 2010, Thomason filed his answer to the complaint, denying that he had a credit card with FIA under the account number ending in 3030 or that he was otherwise indebted to FIA as claimed.[2] Thomason also asserted that FIA had failed to show that it was the real party in interest to sue upon the account. FIA filed a motion for summary judgment on July 27, 2011.

In support of its motion for summary judgment, FIA attached the affidavit of a custodian of records and an authorized officer, who averred to having personal knowledge of the "manner and method by which [FIA] maintains its normal business books and records." He further averred that FIA's records show that Thomason "opened an account with FIA Card Services, N.A., or a predecessor in interest, for the purpose of obtaining an extension of credit and did thereafter use and authorize the use of the account for the acquisition of goods, services, or cash advances in

---

[2] Thomason amended his answer in November 2010.

2

accordance with the customer agreement." The customer agreement, also attached as an exhibit, was dated 2006 and provides that its terms apply to the user of the account and that, as a result of a merger, the customer's Bank of America account would thereafter be issued and administered by FIA.

Additionally, the FIA officer averred that the company's records show that Thomason was in breach of his agreement by failing to make periodic payments and, accordingly, he was indebted to FIA in the sum of $76,114.19 on a 14-digit account number that ended in 1238. Bank of America account billing statements were attached as exhibits referenced in support of same. Those statements, dating back to May 2007, referenced a credit line under a 14-digit account number that ended in 3030, which in December 2009 had an outstanding balance of $76,114.19 with a minimum payment of $10,151.00 due, after a November 2009 statement warned that the account was "scheduled to be written off as bad debt in your next billing cycle."[3]

Thomason filed a response to the motion for summary judgment, once again denying that he was indebted to FIA and challenging its standing to collect upon the alleged debt. Then, in October 2012, Thomason sought leave to amend his answer to

---

[3] The latest attached statement, dated January 2010, showed an outstanding balance of $0.00 with a $76,114.19 charge-off adjustment.

include counterclaims against FIA for breach of fiduciary duty, "failure to exhibit fair dealing and acts of bad faith," fraud, violation of the Fair Debt Collection Practices Act, intentional infliction of emotional distress, and "infliction of willful harm."

On December 27, 2012, the trial court granted FIA's motion for summary judgment, noting that FIA's "detailed affidavit setting forth the evidentiary basis of [its] claim against [Thomason] . . . made out a *prima facie* case." The trial court also ruled that the counterclaims Thomason sought to add "were of a nature such that their validity was dependent upon [FIA] *not prevailing* in [its] [c]omplaint," and, as such, determined that they should be "dismissed." Ultimately, the trial court awarded FIA the requested $76,114.19, plus costs. This appeal by Thomason follows.[4]

Thomason argues first and foremost that the trial court erred in granting summary judgment to FIA when it failed to demonstrate that it was in privity of contract with him. And while Thomason attacks FIA's manner of attempting to prove privity by attaching a copy of the customer agreement that it alleged applied to his

---

[4] Thomason's brief is comprised of six enumerations of error, but enumerations 1, 2, 3, and 5 make essentially the same argument (*i.e.*, that FIA failed to show it was in privity of contract with Thomason), and enumeration 6 encompasses all other enumerations of error by asserting that the trial court abused its discretion by failing to consider Thomason's arguments as to privity and by summarily disposing of his counterclaims.

account,[5] we focus instead on a more obvious problem in the proof submitted by FIA—the failure to properly authenticate *any* document attached in support of its motion for summary judgment.

The FIA officer's affidavit refers to outstanding debt owed on an account ending in 1238, while the complaint and exhibits attached to the affidavit refer to an account ending in 3030. This obvious inconsistency between the account number referenced in the affidavit and that reflected on the attached exhibits results in a failure to properly authenticate the documents that FIA claims establish both privity of contract and the amount owed upon the account.[6] Accordingly, the trial court erred

---

[5] In *Melman v. FIA Card Services, N.A.*, 312 Ga. App. 270 (718 SE2d 107) (2011), we approved of the use of the identical credit-card agreement that was attached to the affidavit in the case *sub judice* to establish a *prima facie* case of an account balance allegedly owed to FIA, *id.* at 272-74 (2). But we also noted in that case that the affiant "averred that the agreement was sent to [the appellant]" and, additionally, that the attached credit-card statements from Bank of America also indicated that the "account is issued and administered by FIA Card Services, N.A." *Id.* at 273 (2). As an aside, we note that neither is true here.

[6] *See Ezeoke v. FIA Card Srvs., N.A.*, 320 Ga. App. 73, 75-76 (739 SE2d 81) (2013) (physical precedent only) (noting that documents attached to affidavit were insufficient to establish damages in motion for judgment on the pleadings when affidavit referenced an entirely different account number than the account noted on the attached statements); *cf. Rutledge v. Gemini Capital Group, LLC*, 327 Ga. App. 454, 456 (757 SE2d 893) (2014) ("[Appellee] provided an affidavit from its CEO, based on personal knowledge and properly authenticated business records attached to the affidavit, showing that [appellant] established a credit card account issued by

in granting summary judgment to FIA and, likewise, in summarily disposing of Thomason's request to add counterclaims against FIA when the trial court did so on the basis that the counterclaims were contingent upon FIA's failure to prevail on its complaint.[7]

---

Chase. The affidavit and supporting documents further show that Chase's interest in the account was ultimately transferred to [appellee] and that [appellant] failed to pay the amounts listed on the statements issued to him and attached to the affidavit. This was sufficient to make a prima facie case supporting [appellee's] suit on the account."); *Ware v. Multibank 2009-1 Res-ADC Venture, LLC*, 327 Ga. App. 245, 248-49 (2) (758 SE2d 145) (2014) (holding that affiant sufficiently authenticated records under Georgia's new Evidence Code when she, after setting out her role and personal access to and knowledge of the records created and maintained by the appellee in the ordinary course of business and the appellee's acquisition of the documents through a transfer, referenced and authenticated the various documents attached to her affidavit as exhibits).

[7] *See Taquechel v. Chattahoochee Bank*, 260 Ga. 755, 756-57 (400 SE2d 8) (1991) (reversing award of damages in grant of summary judgment when the affidavit "recited that it was based in part on bank records, and it [was] clear from the context that the portion of the affidavit which set out the amount owed by defendants was based on bank records," but such records were not attached to the affidavit); *Jackson v. Calvary Portfolio Srvs., LLC*, 314 Ga. App. 175, 177 (723 SE2d 475) (2012) (reversing grant of summary judgment when affidavit and attached exhibits failed to sufficiently prove the amount allegedly due); *cf. League v. Citibank (South Dakota), N.A.*, 291 Ga. App. 866, 869 (2) (663 SE2d 266) (2008) (affirming grant of summary judgment to bank and noting that "[o]nce the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the nonmovant must then come forward with rebuttal evidence to show the existence of a genuine issue of material fact").

For all of the foregoing reasons, we reverse the trial court's grant of summary judgment to FIA.

*Judgment reversed. Doyle, P. J., and Miller, J., concur*.