**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 7, 2016**

# In the Court of Appeals of Georgia

A16A0130, A16A0131. HOWELL et al. v. NORMAL LIFE OF  RI-005
    GEORGIA, INC. et al.; and vice versa.

RICKMAN, Judge.

Laura Howell as Durable Power of Attorney and Next Friend of Christopher Tiegreen (her son) filed a complaint for damages against Normal Life of Georgia, Inc., Res-Care, Inc., James Stephens, Carlos Strong, and Christopher Wages (hereinafter, collectively "Normal Life").[1] Howell sought damages as a result of Tiegreen's imprisonment for what she claimed was Normal Life's: (1) negligent supervision and care of Tiegreen, enabling him to flee his home and commit crimes; and (2) breach of contract, by failing to adequately supervise and care for Tiegreen,

---

[1] Keith Strong was also named as a defendant, but service was not perfected as to him.

enabling Tiegreen to flee his home, in violation of the terms of the contract for his care. Howell also sought punitive damages and attorney fees.

Normal Life moved for summary judgment on all claims. The trial court granted partial summary judgment in favor of Normal Life on the claims for negligence, punitive damages, and attorney fees; the trial court denied summary judgment on the breach of contract claim. In Case No. A16A0130, Howell appeals the partial grant of summary judgment in favor of Normal Life on her claims for negligence, punitive damages, and attorney fees. In Case No. A16A0131, Normal Life appeals the trial court's denial of summary judgment on the breach of contract claim. For the reasons that follow, in Case No. A16A0130, we affirm the judgment of the trial court, and in Case No. A16A0131, we reverse the judgment of the trial court denying summary judgment on the breach of contract claim.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the

nonmovant." (Citation and punctuation omitted.) *Courtland Hotel, LLC v. Salzer*, 330 Ga. App. 264 (767 SE2d 750) (2014).

The trial court set out the un-disputed facts accurately and succinctly in its order, as follows.[2]

> This action arises out of an incident during which Christopher Tiegreen eloped from the supervision of employees of Defendants Normal Life and Res-Care and, within minutes of that elopement from supervision, sexually assaulted a female. Tiegreen subsequently was indicted on charges of Aggravated Assault, Attempt to Commit a Felony, False Imprisonment, Battery, Sexual Battery, and Cruelty to Children. Tiegreen filed a plea of mental incompetency, and a special jury empanelled to hear the plea of mental incompetency found him to be competent to stand trial. Tiegreen subsequently entered a guilty plea to the charges, and Superior Court Judge David Sweat accepted his guilty plea after a lengthy colloquy regarding the voluntariness of the plea. Tiegreen was sentenced to 30 years, with the first 7 years to be served in confinement and the balance to be served on probation.
>
> The supervision of Tiegreen by Defendants Normal Life and Res-Care was provided pursuant to a contract entered into with the State of Georgia under which Normal Life and Res-Care provided residential care and supervision for citizens with cognitive, intellectual and/or developmental disabilities. Tiegreen, who suffered a traumatic brain

---

[2] The trial court prepared a detailed order; and counsel for both parties prepared detailed and well written briefs. The order and briefs have greatly assisted this Court.

3

injury in 2001, was known to be manipulative, prone to attempts at elopement, and susceptible to impulse control problems and inappropriate sexual behavior. His Individual Service Plan (ISP) therefore required that two individuals supervise him within arms' length at all times. On September 11, 2009, Defendants Stephens, Strong, and Wages were employed by Defendants Normal Life and Res-Care to supervise Tiegreen at his residential duplex in Athens when Tiegreen eloped from supervision during their shift change and committed the crimes outlined above.

It is undisputed that Tiegreen had never been adjudicated or found by any court to be an incapacitated adult, he had never been ruled incompetent by a court of law, and he had not been declared insane.

*Case No. A16A0130*

1. Howell contends that the trial court "erred in discerning the boundaries" of the rule that applies to this case, and that correctly construed, the rule would not have barred her negligence claim.

Howell argues that this Court's statement in *Bruscato v. O'Brien*, 307 Ga. App. 452, 460 (2) (705 SE2d 275) (2010) that "public policy . . . prohibits those who commit murder or voluntary manslaughter from profiting from the victim's death" controls this case, and that because the instant case does not involve a murder, her

4

negligence claim is not barred. However, Howell's reliance on the foregoing quoted language from *Bruscato* is misplaced. Instead, the rule that applies to this case is as stated by the Supreme Court of Georgia when it granted certiorari to this Court in *Bruscato*: "In most circumstances, one may not profit from his own act of wrongdoing. Therefore, when one knowingly commits a wrongful act, he cannot use this act for personal gain." *O'Brien v. Bruscato*, 289 Ga. 739, 742 (715 SE2d 120) (2011).

In *Bruscato*, this Court held that the guardian of a mentally ill patient with a history of violence, homicidal thoughts toward his parents, and auditory hallucinations that commanded him to kill people or to molest girls – could pursue on the patient's behalf a medical malpractice claim against the patient's psychiatrist. *Bruscato*, 307 Ga. App. at 452-453. The psychiatrist had discontinued some of the patient's medications, and less then three months later the patient killed his mother. *Bruscato*, 307 Ga. App. at 453-454. In reversing the trial court's grant of summary judgment in favor of the psychiatrist, this Court concluded that because the patient had not been convicted of murder, no court had found him mentally competent at the time of the crime, and the evidence did not establish, as a matter of law, that he was mentally competent when he killed his mother, a jury issue existed as to whether the

5

patient had the requisite mental capacity to commit murder, and the patient was not a "'wrongdoer' whose status as such would be a bar to any of his claims." *Bruscato*, 307 Ga. App. at 459, 462 (2).

This Court's reference in *Bruscato* to a "public policy . . . that prohibits those who commit murder or voluntary manslaughter from profiting from the victim's death," regarded "the statutes the trial court and the dissent rely upon as *embodying* Georgia's public policy of prohibiting wrongdoers from profiting from their crimes." (Emphasis supplied.) *Bruscato*, 307 Ga. App. at 459-460 (2). The Supreme Court of Georgia granted certiorari to "determine whether the Court of Appeals properly ruled that [the patient's] claim for damages is not barred by Georgia public policy." *O'Brien*, 289 Ga. at 740. In its decision, the Supreme Court said that this Court had correctly "examined" and "determined" the public policy issues before it,[3] and that the Supreme Court was "generally adopt[ing] the Court of Appeals' analysis." (Emphasis supplied.) *O'Brien*, 289 Ga. at 742. The Supreme Court then took the opportunity to enunciate the following rule:

---

[3] As previously set forth, the public policy issues involved prohibiting those who commit murder or voluntary manslaughter from profiting from the victim's death.

6

In most circumstances, one may not profit from his own act of wrongdoing. Therefore, when one knowingly commits a wrongful act, he cannot use this act for personal gain. There may be situations, however, when an individual's psychiatric disorder prevents him from exercising a reasonable degree of care to prevent himself from taking improper and illegal actions.

(Citations omitted.) Id. In reaching its conclusion, the Supreme Court did not adopt any rule from *Bruscato*, and given that the instant case does not involve either murder or voluntary manslaughter, the trial court applied the proper *O'Brien* rule.

Furthermore, in applying the rule, the trial court properly granted summary judgment in favor of Normal Life on the negligence claim. In *O'Brien*, the Supreme Court held that on the same grounds as was found by this Court in *Bruscato*, a jury issue existed as to whether the patient had the requisite mental capacity to commit murder. *O'Brien*, 289 Ga. at 743. The Supreme Court thus concluded that "[a]s a result, at this moment in time, it cannot be said that, should [the patient's] claim against [the psychiatrist] be successful, he might profit from *knowingly* committing a wrongful act," and therefore, summary judgment was not authorized by the evidence. Id. In the instant case, given that the damages Howell sought flowed from the criminal acts Tiegreen acknowledged by entry of his plea of guilty that he

7

knowingly committed, the circumstances fall under the rule as enunciated by the Supreme Court, and Howell's negligence claim is barred. Therefore, the trial court did not err in granting summary judgment in favor of Normal Life on Howell's negligence claim and consequently on the punitive damages claim. See generally *Trust Co. Bank v. Citizens & Southern Trust Co.*, 260 Ga. 124, 126 (1) (b) (390 SE2d 589) (1990) ("Punitive damages are not available in actions for breach of contract."); *Burlington Air Express, Inc. v. Ga. Pacific Corp.*, 211 Ga. App. 113, 116 (5) (438 SE2d 97) (1993) ("punitive damages cannot be awarded for breach of contract"); OCGA § 13-6-10.

We agree with the trial court's grant of summary judgment in favor of Normal Life on Howell's claim for attorney fees. Howell failed to adduce any evidence that Normal Life acted in bad faith, had been stubbornly litigious, or caused Howell unnecessary trouble and expense pursuant to OCGA § 13-6-11.

*Case No. A16A0131*

2. Normal Life contends that the trial court erred in denying its motion for summary judgment as to the claim for breach of contract. We agree.

As determined in Division 1, supra, the rule that applies to this case is that an individual may not profit from his/her own act of wrongdoing. *O'Brien*, 289 Ga. at

8

742. It appears as though the trial court erroneously failed to consider the *O'Brien* rule with regard to the breach of contract claim.[4] Given the facts of this case as set forth above, including that Tiegreen knew that his criminal conduct which resulted in his imprisonment was wrongful, and a jury found Tiegreen mentally competent to stand trial, we reverse the trial court's denial of summary judgment in favor of Normal Life regarding the breach of contract claim. See generally, *Unigard Ins. Co. v. Zimmerman's, Inc.*, 151 Ga. App. 394-395 (1) (259 SE2d 652) (1979) (in subrogation agreement case, reaffirming principle that "a wrongdoer will not be permitted to profit from wrongdoing.").

*Judgment affirmed in Case No. A16A0130; judgment reversed in Case No. A16A0131. Boggs, J., concurs. Barnes, P. J., concurs specially.*

---

[4] Notably, although we did not see where Normal Life argued at the summary judgment hearing that the *O'Brien* rule applied specifically to the breach of contract claim, our review of the record revealed that Normal Life made such argument in its written motion.

A16A0130. A16A0131. HOWELL et al. v. NORMAL LIFE OF   xx-005
GEORGIA, INC. et al.; and vice versa.


BARNES, Presiding Judge, concurring specially.

Given the record before us, I agree with the majority that the plaintiff's

negligence and breach-of-contract claims fail as a matter of law under the wrongful-

conduct rule, but I do not agree with all that is said in the majority's opinion

regarding the guilty plea entered by Christopher Tiegreen. I therefore concur only in

the judgment, and the majority opinion may not be cited as binding precedent. See

Court of Appeals Rule 33 (a).

As the majority notes, under Georgia's wrongful-conduct rule, "one may not

profit from his own act of wrongdoing. Therefore, when one knowingly commits a

wrongful act, he cannot use this act for personal gain." *O'Brien v. Bruscato*, 289 Ga.

739, 742 (715 SE2d 120) (2011). The wrongful-conduct rule has been applied in both

tort and breach-of-contract cases. See id.; *Unigard Ins . Co. v. Zimmerman's, Inc.*, 151 Ga. App. 394, 395-396 (1) (259 SE2d 652) (1979).

Notably, however, there is an exception to the wrongful-conduct rule in cases involving mentally ill patients who commit wrongful acts towards third parties while under the care or supervision of a hospital or mental health care provider. In that context, we have held that

> a patient's psychiatric disorder may prevent him from having the mental capacity to exercise control over his intentional behavior or, at least, from exercising a reasonable degree of care in order to prevent himself from harming others. . . . [T]he fact that a patient's illegal act was volitional does not necessarily mean that it was a rational act for which the patient alone was responsible or which relieved . . . the hospital [or mental health care provider] of its duty to the patient.

(Citations omitted.) *Bruscato v. O'Brien*, 307 Ga. App. 452, 461 (2) (705 SE2d 275) (2010), aff'd, *O'Brien*, 289 Ga. 739. See *Ga. Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 776-777 (9) (403 SE2d 235) (1991); *Swofford v. Cooper*, 184 Ga. App. 50, 54 (4) (360 SE2d 624) (1987). Thus, the wrongful-conduct rule does not bar a patient or his representative's tort or contractual claim against a hospital or mental health provider for breaching a duty to treat and supervise a patient who harms a third party, where there is evidence that the patient suffered from a neurological or psychological

2

condition that prevented him from exercising control over his own behavior or from otherwise exercising a reasonable degree of care to avoid harming others. See id.

In moving for summary judgment in the present case, the defendants came forward with evidence that Tiegreen's neurological condition caused by his traumatic brain injury did not prevent him from exercising control over his own behavior or from exercising a reasonable degree of care to avoid harming others. Specifically, the defendants pointed to evidence that Tiegreen pled guilty to several criminal offenses that he committed against third parties upon escaping from the supervision of the defendants.[1]

A guilty plea is admissible in a civil case and constitutes prima facie evidence of the facts admitted in the plea. See OCGA § 24-8-803 (22); *Hasty v. Spruill*, 207 Ga. App. 485, 486 (428 SE2d 420) (1993). Hence, by pleading guilty in his criminal case, Tiegreen admitted to the existence of the facts supporting the elements of the crimes to which he pled, including that the crimes were committed with the requisite

---

[1] A special jury found Tiegreen mentally competent to stand trial in his criminal case, see *Tiegreen v. State*, 314 Ga. App. 860 (726 SE2d 468) (2012), but that finding does not have preclusive effect in the current civil case because the two proceedings are not between the same parties or their privies. See *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 867 (2) (463 SE2d 5) (1995) (per curiam) (preclusion doctrines of res judicata and collateral estoppel "require[] the identity of the parties or their privies in both actions").

culpable mental capacity. See generally *Wharton v. Anderson*, 270 Ga. 22, 24 (2) (504 SE2d 670) (1998) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.").

But, contrary to the majority's suggestion, we have long held that admissions made as part of a guilty plea "are not *conclusive* [in civil cases] and may, therefore, be rebutted to create a genuine issue of material fact for the jury's determination." (Emphasis supplied.) *Hasty*, 207 Ga. App. at 486. See *Miller v. Crumbley*, 249 Ga. App. 403, 405 (2) (548 SE2d 657) (2001); *Peacock v. Strickland*, 198 Ga. App. 406, 406-407 (1) (401 SE2d 601) (1991); *Kickasola v. Jim Wallace Oil Co.*, 144 Ga. App. 758, 761 (8) (242 SE2d 483) (1978).[2] As we have explained,

> Georgia does not generally allow the record in a criminal prosecution to
> act as a bar to a later civil action arising from the same transaction

---

[2] *O'Brien*, 289 Ga. 739, does not require a different conclusion regarding the effect of a guilty plea. In that case, the patient whose wrongful conduct was at issue had not pled guilty to any crimes. Our Supreme Court in *O'Brien* thus did not address the circumstance where the plaintiff's admissions as part of a guilty plea conflict with other evidence in the record (such as expert psychiatric testimony) regarding the plaintiff's mental capacity. In that latter circumstance, our binding precedent reflects that the guilty plea should be treated only as prima facie evidence of the facts admitted in the plea that can be rebutted to create a genuine issue of material fact for trial, as indicated in the cases cited above.

4

because the two actions are not between the same parties and because the rules as to the competency of witnesses and the weight of evidence required for a finding are different. . . . Therefore, . . . neither res judicata nor collateral estoppel apply.

*McGuire v. Witcher*, 201 Ga. App. 685, 686 (411 SE2d 875) (1991).[3]

Based on this precedent, if the party moving for summary judgment presents evidence that the non-movant entered into a guilty plea admitting to certain facts relevant to the case, the burden then shifts to the non-movant to produce evidence rebutting the admission contained in the guilty plea sufficient to create a genuine issue of material fact for trial. See *Hasty*, 207 Ga. App. at 486. Accordingly, once the defendants in this case came forward with evidence of Tiegreen's guilty plea, the burden shifted to the plaintiff to produce rebuttal evidence reflecting that Tiegreen suffered from a mental condition that prevented him from exercising control over his

---

[3] In certain civil proceedings relating to a decedent's estate, "[a] final judgment of conviction or a guilty plea for murder, felony murder, or voluntary manslaughter is conclusive." OCGA § 53-1-5 (d). That statute clearly does not apply here. Furthermore, OCGA § 53-1-5 (d) reflects that if the legislature wished to make criminal convictions and guilty pleas conclusive in civil proceedings more generally, it knew how to do so. "We must presume that its failure to do so was a matter of considered choice." (Citation and punctuation omitted.) *Inland Paperboard & Packaging v. Georgia Dept. of Revenue*, 274 Ga. App. 101, 104 (616 SE2d 873) (2005).

own behavior or from otherwise exercising a reasonable degree of care to avoid harming others. See id. This, however, the plaintiff failed to do.

In her appellate brief, the plaintiff points to a neuropsychological evaluation of Tiegreen conducted by a Dr. Hugh Brown to show that Tiegreen had no control over his impulsive behavior as a result of his traumatic brain injury. But there are no deposition transcripts or affidavits from Dr. Brown in the record before us. And while Dr. Brown's neuropsychological evaluation was marked as an exhibit during the plaintiff's deposition, it was never properly authenticated and thus could not be considered on motion for summary judgment.[4] See *Maloof v. Metro. Atlanta Rapid Transit Auth.*, 330 Ga. App. 763, 765 (1) (769 SE2d 174) (2015) ("Admissibility of evidence on motion for summary judgment is governed by the rules relating to form and admissibility of evidence generally.") (citation and punctuation omitted); *Thomason v. FIA Card Svcs., N.A.*, 330 Ga. App. 603, 605 (768 SE2d 785) (2015) (unauthenticated exhibits were not competent proof for purposes of summary judgment). Moreover, the neuropsychological evaluation is not included in the appellate record and thus is not available for our review. The plaintiff therefore has

---

[4] In the trial court, the defendants challenged the admissibility of the plaintiff's evidence of Tiegreen's lack of mental capacity.

failed to point to any competent evidence in the record reflecting that Tiegreen had a neurological or psychological condition that prevented him from exercising control over his behavior or from exercising a reasonable degree of care to avoid harming others.

Given that Tiegreen's guilty plea to the crimes stood unrebutted, the trial court did not err in concluding that the plaintiff's tort and contract claims failed as a matter of law based on the wrongful-conduct rule.[5] Consequently, while I do not agree with all of the majority's legal analysis, I agree with the majority's ultimate conclusion that we must affirm the trial court's grant of summary judgment to the defendants.

---

[5] Because the plaintiff could not succeed on her substantive claims for negligence and breach of contract, her claims for punitive damages and attorney fees also failed as a matter of law. See *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 52 (5) (668 SE2d 737) (2008).