Rickman, Judge.
Laura Howell as Durable Power of Attorney and Next Friend of Christopher Tiegreen (her son) filed a complaint for damages against Normal Life of Georgia, Inc., Res-Care, Inc., James Stephens, Carlos Strong, and Christopher Wages (hereinafter, collectively “Normal Life”).[1] Howell sought damages as a result of Tiegreen’s imprisonment for what she claimed was Normal Life’s: (1) negligent supervision and care of Tiegreen, enabling him to flee his home and commit crimes; and (2) breach of contract, by failing to adequately supervise and care for Tiegreen, enabling Tiegreen to flee his home, in violation of the terms of the contract for his care. Howell also sought punitive damages and attorney fees.
Normal Life moved for summary judgment on all claims. The trial court granted partial summary judgment in favor of Normal Life on the claims for negligence, punitive damages, and attorney fees; the trial court denied summary judgment on the breach of contract claim. In Case No. A16A0130, Howell appeals the partial grant of summary judgment in favor of Normal Life on her claims for negligence, punitive damages, and attorney fees. In Case No. A16A0131, Normal Life appeals the trial court’s denial of summary judgment on the breach of contract claim. For the reasons that follow, in Case No. A16A0130, we affirm the judgment of the trial court, and in Case No. *775 A16A0131, we reverse the judgment of the trial court denying summary judgment on the breach of contract claim.
Summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” OCGA § 9-11-56 (c). “We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.” (Citation and punctuation omitted.) Courtland Hotel v. Salzer, 330 Ga. App. 264 (767 SE2d 750) (2014).
The trial court set out the undisputed facts accurately and succinctly in its order, as follows.[2]
This action arises out of an incident during which Christopher Tiegreen eloped from the supervision of employees of Defendants Normal Life and Res-Care and, within minutes of that elopement from supervision, sexually assaulted a female. Tiegreen subsequently was indicted on charges of Aggravated Assault, Attempt to Commit a Felony, False Imprisonment, Battery, Sexual Battery, and Cruelty to Children. Tiegreen filed a plea of mental incompetency, and a special jury empanelled to hear the plea of mental incompetency found him to be competent to stand trial. Tiegreen subsequently entered a guilty plea to the charges, and Superior Court Judge David Sweat accepted his guilty plea after a lengthy colloquy regarding the voluntariness of the plea. Tiegreen was sentenced to 30 years, with the first 7 years to be served in confinement and the balance to be served on probation.
The supervision of Tiegreen by Defendants Normal Life and Res-Care was provided pursuant to a contract entered into with the State of Georgia under which Normal Life and Res-Care provided residential care and supervision for citizens with cognitive, intellectual and/or developmental disabilities. Tiegreen, who suffered a traumatic brain injury in 2001, was known to be manipulative, prone to attempts at elopement, and susceptible to impulse control problems and inappropriate sexual behavior. His Individual Service Plan *776 (ISP) therefore required that two individuals supervise him within arms’ length at all times. On September 11, 2009, Defendants Stephens, Strong, and Wages were employed by Defendants Normal Life and Res-Care to supervise Tiegreen at his residential duplex in Athens when Tiegreen eloped from supervision during their shift change and committed the crimes outlined above.
It is undisputed that Tiegreen had never been adjudicated or found by any court to be an incapacitated adult, he had never been ruled incompetent by a court of law, and he had not been declared insane.

Case No. A16A0130

1. Howell contends that the trial court “erred in discerning the boundaries” of the rule that applies to this case, and that correctly construed, the rule would not have barred her negligence claim.
Howell argues that this Court’s statement in Bruscato v. OBrien , 307 Ga. App. 452, 460 (2) (705 SE2d 275) (2010) that “public policy... prohibits those who commit murder or voluntary manslaughter from profiting from the victim’s death” controls this case, and that because the instant case does not involve a murder, her negligence claim is not barred. However, Howell’s reliance on the foregoing quoted language from Bruscato is misplaced. Instead, the rule that applies to this case is as stated by the Supreme Court of Georgia when it granted certiorari to this Court in Bruscato: “In most circumstances, one may not profit from his own act of wrongdoing. Therefore, when one knowingly commits a wrongful act, he cannot use this act for personal gain.” O'Brien v. Bruscato, 289 Ga. 739, 742 (715 SE2d 120) (2011).
In Bruscato, this Court held that the guardian of a mentally ill patient with a history of violence, homicidal thoughts toward his parents, and auditory hallucinations that commanded him to kill people or to molest girls — could pursue on the patient’s behalf a medical malpractice claim against the patient’s psychiatrist. Bruscato, 307 Ga. App. at 452-453. The psychiatrist had discontinued some of the patient’s medications, and less then three months later the patient killed his mother. Bruscato, 307 Ga. App. at 453-454. In reversing the trial court’s grant of summary judgment in favor of the psychiatrist, this Court concluded that because the patient had not been convicted of murder, no court had found him mentally competent at the time of the crime, and the evidence did not establish, as a matter of law, that he was mentally competent when he killed his mother, a jury issue existed as to whether the patient had the requisite mental capacity to commit murder, and the patient was not *777 a “ ‘wrongdoer’ whose status as such would be a bar to any of his claims.” Bruscato, 307 Ga. App. at 459, 462 (2).
This Court’s reference in Bruscato to a “public policy . . . that prohibits those who commit murder or voluntary manslaughter from profiting from the victim’s death,” regarded “the statutes the trial court and the dissent rely upon as embodying Georgia’s public policy of prohibiting wrongdoers from profiting from their crimes.” (Emphasis supplied.) Bruscato, 307 Ga. App. at 459. The Supreme Court of Georgia granted certiorari to “determine whether the Court of Appeals properly ruled that [the patient’s] claim for damages is not barred by Georgia public policy.” O'Brien, 289 Ga. at 740. In its decision, the Supreme Court said that this Court had correctly “examined” and “determined” the public policy issues before it,[3] and that the Supreme Court was “generally adopting] the Court of Appeals’ analysis.” (Emphasis supplied.) O'Brien, 289 Ga. at 742. The Supreme Court then took the opportunity to enunciate the following rule:
In most circumstances, one may not profit from his own act of wrongdoing. Therefore, when one knowingly commits a wrongful act, he cannot use this act for personal gain. There may be situations, however, when an individual’s psychiatric disorder prevents him from exercising a reasonable degree of care to prevent himself from taking improper and illegal actions.
(Citations omitted.) Id. In reaching its conclusion, the Supreme Court did not adopt any rule from Bruscato, and given that the instant case does not involve either murder or voluntary manslaughter, the trial court applied the proper OBrien rule.
Furthermore, in applying the rule, the trial court properly granted summary judgment in favor of Normal Life on the negligence claim. In OBrien, the Supreme Court held that on the same grounds as was found by this Court in Bruscato, a jury issue existed as to whether the patient had the requisite mental capacity to commit murder. OBrien, 289 Ga. at 743. The Supreme Court thus concluded that “[a]s a result, at this moment in time, it cannot be said that, should [the patient’s] claim against [the psychiatrist] be successful, he might profit from knowingly committing a wrongful act,” and therefore, summaryjudgmentwasnot authorized by the evidence. Id. In the instant case, given that the damages Howell sought flowed *778 from the criminal acts Tiegreen acknowledged by entry of his plea of guilty that he knowingly committed, the circumstances fall under the rule as enunciated by the Supreme Court, and Howell’s negligence claim is barred. Therefore, the trial court did not err in granting summary judgment in favor of Normal Life on Howell’s negligence claim and consequently on the punitive damages claim. See generally Trust Co. Bank v. Citizens & Southern Trust Co., 260 Ga. 124, 126 (1) (b) (390 SE2d 589) (1990) (“Punitive damages are not available in actions for breach of contract.”); Burlington Air Express v. Ga. Pacific Corp., 211 Ga. App. 113, 116 (5) (438 SE2d 97) (1993) (“[Pjunitive damages cannot be awarded for breach of contract.”); OCGA § 13-6-10.
We agree with the trial court’s grant of summary judgment in favor of Normal Life on Howell’s claim for attorney fees. Howell failed to adduce any evidence that Normal Life acted in bad faith, had been stubbornly litigious, or caused Howell unnecessary trouble and expense pursuant to OCGA § 13-6-11.

Case No. A16A0131

2. Normal Life contends that the trial court erred in denying its motion for summary judgment as to the claim for breach of contract. We agree.
As determined in Division 1, supra, the rule that applies to this case is that an individual may not profit from his/her own act of wrongdoing. O'Brien, 289 Ga. at 742. It appears as though the trial court erroneously failed to consider the OBrien rule with regard to the breach of contract claim.[4] Given the facts of this case as set forth above, including that Tiegreen knew that his criminal conduct which resulted in his imprisonment was wrongful, and a jury found Tiegreen mentally competent to stand trial, we reverse the trial court’s denial of summary judgment in favor of Normal Life regarding the breach of contract claim. See generally Unigard Ins. Co. v. Zimmerman’s, Inc., 151 Ga. App. 394, 395 (1) (259 SE2d 652) (1979) (in subrogation agreement case, reaffirming principle that “a wrongdoer will not be permitted to profit from wrongdoing”).

Judgment affirmed in Case No. Al 6A0130. Judgment reversed in Case No. A16A0131.

Boggs, J., concurs. Barnes, P. J., concurs specially.

 Keith Strong was also named as a defendant, but service was not perfected as to him.

 The trial court prepared a detailed order; and counsel for both parties prepared detailed and well written briefs. The order and briefs have greatly assisted this Court.

 As previously set forth, the public policy issues involved prohibiting those who commit murder or voluntary manslaughter from profiting from the victim’s death.

 Notably, although we did not see where Normal Life argued at the summary judgment hearing that the O’Brien rule applied specifically to the breach of contract claim, our revie w of the record revealed that Normal Life made such argument in its written motion.